Caroline K. Simon, J.
The claimant in this action for unlawful imprisonment was born in Puerto Rico. He came to New York to live with his mother. In 1961, when he had been here more than 10 years, he was arrested and charged with the third degree burglary of a vegetable market. Thereafter, a Judge of the Court of General Sessions declared him a youthful offender on May 3, 1961. His sentence was suspended, despite previous encounters with the law, and he was placed on probation.
On November 3, 1962, along with three other young men, Juan Rodriguez was arrested, charged with assault and robbery of a man on a downtown Manhattan street. On November 8, a bench warrant was issued charging him with violation of probation and a hearing was set for November 26. On November 20, when claimant was in the Brooklyn House of Detention, he was held for the action of the New York County Grand Jury on the new charge. The November 26 hearing was adjourned until January 3, 1963 pending disposition of the assault charge.
Claimant pleaded guilty to the third count of the indictment, assault in the third degree, in the New York County Supreme Court on February 7, 1963, and, represented by counsel, was sentenced on March 14, 1963 and sent to the New York City Reformatory with the Judge’s recommendation that he be confined for 10 months and placed on a concentrated supervision and surveillance program.
On March 18, 1963, Juan Rodriguez was discharged from probation by the same General Sessions Judge who had originally suspended his sentence as a youthful offender.
The New York City Parole Commission, in a letter to the Warden of Rikers Island Reformatory dated January 30, 1964, instructed him to release Juan Rodriguez to their parole officer who would call at the institution on February 4. The next chronological record submitted at this trial includes a Department of Correction “Accompanying Card” containing the *671 notation that claimant was charged on February 4 with violation of his probation and remanded to custody by another Justice of the Supreme Court. He remained in custody in City Prison from February 4 to August 10, 1964, and was discharged from custody in open court on the latter date.
It is claimant’s allegation that, during the period of illegal imprisonment, Juan Rodriguez contracted tuberculosis due to the State’s ‘ ‘ carelessness, negligence and misfeasance ’ ’. Claimant also sues for “ false, unjust and unlawful imprisonment ”. Damages of $100,000 are sought.
Notice of intention to file claim was received and filed by the office of the Attorney-General and the Clerk of the Court of Claims on October 13, 1964, and the claim itself was timely filed with the Clerk of the Court of Claims on July 2,1965. The claim has neither been assigned nor brought before any other court or tribunal for determination.
At the opening of the trial, the Attorney-General moved to dismiss on the ground that claimant’s imprisonment was in a city prison for which the State had no responsibility. Claimant asserted that the negligence from which the false imprisonment resulted was that of a Clerk of the State Supreme Court, and the illegal commitment that of a State Supreme Court Justice, and that the place of confinement was immaterial. He also emphasized that State Judges order commitment and release from city prisons.
The court reserved decision on the motion to dismiss and, in the interest of justice, directed the trial to proceed in order to avoid unnecessary calendar congestion and the possible need to restore the claim to the calendar if the motion to dismiss later was denied, and to give claimant his day in court in an orderly manner.
The trial then proceeded with proof that claimant was admitted to Bellevue Hospital on June 6, 1964. Their records include notations that he complained of intermittent chills and fever, weight loss, swollen neck glands, and also noted a dry cough. He was diagnosed as ‘1 Pulmonary Tuberculosis * * * Anemia ”. Biopsies were performed, medication was prescribed, X rays were taken. He remained under treatment there until August 4, when he was returned to Rikers Island Hospital.
After his discharge from prison on August 10, he was admitted to Van Etten Hospital in The Bronx by authorization of the New York 'City Hospitals Tuberculosis Director on September 23 and remained for care and treatment until November 6, 1964. The diagnosis was “ Tuberculosis of Supra-Olavicular *672 Node Mr. Rodriguez was treated, and upon Ms discharge, was referred to their outpatient T.B. clinic. He testified that he is required to take daily medication even to the present time.
Claimant testified that though he never had tuberculosis before, ho was coughing and had chest pains for about two years before his imprisonment, for which condition he went to a private doctor for treatment. Claimant further stated that when he was examined at Bikers Island he told the doctor of his chest trouble and of his coughing up “ one half a cupful of white material” for the past four months, but he was not hospitalized at Bikers Island.
There was no further evidence before the court of claimant’s physical condition when he was taken into custody. The court finds that there is no basis for a finding that tuberculosis was contracted while claimant was in prison.
Claimant testified to earnings averaging $65 to $70 a week from work in the garment district as shipping clerk and porter, and as delivery and counter helper in a grocery store. Substantiation in withholding statements for 1961 and 1962 evidenced that $1,179.00 was earned in 1961 and $443.86 in 1962. He now is working again as a shipping clerk in the garment district, earning $70 a week, so no lessening in his weekly earnings has resulted from the confinement and illness.
The New York City Department of Correction, through its counsel, testified to the Department not having been advised that the probation period had terminated, though the Clerk of the State Supreme Court is stated to have the duty of notifying appropriate officials when probation has ended.
On the evidence before the court, claimant clearly was discharged from probation on March 18, 1963 but nevertheless was held in prison during a four-month period thereafter, beginning February 4, 1964, for alleged violation of that same probation which no longer bound him, and for no other reason.
The Clerk of the County Court, which in New York County was the Court of General Sessions, acts as Clerk of the Supreme Court under section 21 of article VI of the State Constitution. It has been determined that: ‘ ‘ The County Clerk is a county officer and not a State or judicial officer except that when actually engaged as Clerk of the courts, he is part of the judicial system of the State.” (People v. Van Slyke, 31 Misc 2d 434, 435.)
Effective September 1, 1962, the Court of General Sessions was merged into the Supreme Court by section 35 of article VI. At the time when claimant was imprisoned as a probation violator the Clerk of the Supreme Court in the instant matter *673 was acting as part of the Stale judicial system, as was the Judge.
There is ample' authority, and this court so finds, that “ the State is not liable for an erroneous judicial determination underlying an order, valid on its face, made by a court having jurisdiction ” (Whitree v. State of New York, 26 A D 2d 720, 721 citing other cases).
On February 4, 1964 when a Criminal Court Judge, acting as a Supreme Court Judge on proper designation by the Appellate Division, ordered claimant to prison as a probation violator, the Judge had no information before him that the probation period had ended.
Courts have stated it to be the law by which this court must be bound that a County Court Clerk, as part of a court that had been absorbed into the State judicial system, is protected from the consequences of acts which are quasi-judicial in nature and require the exercise of judgment and discretion as also are such acts of a County Judge. (Jameison v. State of New York, 4 Misc 2d 326, affd. 7 A D 2d 944.)
The Bellevue Hospital and Van Etten Hospital records, which were introduced into evidence as claimant’s Exhibits 9 and 10 respectively, provide exhaustive documentation of the care and treatment provided for Mr. Rodriguez. No professional medical opinion was offered by claimant to substantiate the theory of causalty, nor to show a causal connection between his tubercular condition and the period during which he was confined in Bikers Island Reformatory nor to warrant a finding of “ carelessness, negligence and misfeasance” as charged in the claim. The claimant himself stated that he had experienced coughing and pains in his chest two years before his incarceration. He further stated that he told this to the Bikers Island doctor when he was examined, but he was not hospitalized.
For an action grounded in negligence to succeed, four essential elements must be demonstrated to the court’s satisfaction. The State must be shown to owe a legal duty to the claimant to conform to a standard of conduct protecting him against unreasonable risks; there must be a failure to conform to that standard; there must be a reasonably close causal connection between the conduct and the resulting injury; and loss or damage must be proven.
Sections 2, 5 and 6 of article XVII of the State Constitution empower the State Board of Welfare and the Commissioner of Correction to visit and inspect all institutions “for the detention of persons charged with or convicted of crime and for systems of probation and parole of persons convicted of crime. ’ ’
*674 These powers are further delineated in subdivisions 1 and 8 of section 46 of the Correction Law.
Section 217 of the County Law states that * ‘ Each county shall continue to maintain a county jail as prescribed by law.”
Though the New York City Penitentiary and the New York City Prison are agencies of the City of New York and subject to the jurisdiction of the city’s Department of Correction, they are, to a degree specified by statute, within the responsibility of the State Department of Correction. (Correction Law, art. 3, § 46, subd. 8.)
The court finds the Clerk’s duty of notification that probation had ended to be a quasi-judicial act related to the sentencing process. Thus it differs from duties of the Clerk to keep and certify records, which duties have been classified as ministerial in nature.
The law explicitly states that: “ it does not necessarily follow # * * that a determination of illegality of imprisonment gives rise ipso facto to a claim for damages for false arrest and imprisonment.” (Nastasi v. State of New York, 275 App. Div. 524, 525, affd. 300 N. Y. 473.)
In the instant matter the violation of probation, valid at its inception in Fishbein v. State of New York (204 Misc. 151), was never valid. “ They were confronted with what appeared to be a valid directive for the arrest and incarceration of the claimant, and in yielding obedience to it they did not subject themselves or the State to an action for false arrest and imprisonment.” (Fishbein v. State of New York, supra, p. 153.)
The Supreme Court was not advised that probation actually had ended. The question then posed must be: Did the court have jurisdiction when it acted and sentence was imposed? (See People ex rel. Harty v. Fay, 10 N Y 2d 374.)
The statement that if a judicial officer acts without jurisdiction he acts in a private capacity (Koeppe v. City of Hudson, 276 App. Div. 443) has been limited by the decision in Jameison v. State of New York (7 A D 2d 944, 945, supra) which qualifies it by saying: “ It was not intended by this language to convey the impression that a Judge is personally liable when he erroneously assumes jurisdiction in good faith.”
Harsh though the application of the rule of judicial immunity may seem, it is essential to bear in mind the comment of Judge Learned Hand in Gregoire v. Biddle (177 F. 2d 579, 581) that liability under such circumstances ‘ ‘ would dampen the ardor of all but the most resolute, or the most irresponsible, in the unflinching discharge of their duties.”
*675 The court, finding that the State cannot be held liable in damages for the imprisonment from March to August, cannot hold the State liable for consequences flowing from the imprisonment. The standards set for an action in negligence to succeed have not been met. This claim therefore must be and hereby is dismissed. The court, having found that the State may not be held liable for judicial acts of the Judge nor for those of the Clerk does not need nor does it determine the degree to which the State is liable for acts of the City Department of Correction and its operation of the Raymond Street Jail.
Motions made during the trial for dismissal, on which decision was reserved, now are denied. Motion made at the end of the trial for dismissal is granted.